**PEABODY & BUCCINI LLP**
**THOMAS M. PEABODY, ESQ. (SBN: 178237)**
**PATRICK S. LUDEMAN, ESQ. (SBN: 261314)**
**527 Encinitas Blvd., Ste 100**
**Encinitas, CA 92024**
**Telephone No. (760) 652-3150**
**Facsimile No. (760) 652-3160**

**Attorneys for Defendants,**
**The Regents of the University of California**
[erroneously sued as UC San Diego Health and University of California Health]
*(**Governmental Entities and Employees of Governmental Entity; No Filing Fee Required Pursuant to Gov. Code § 6103***

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALIMA WITT,<br><br>       Plaintiff,<br><br>     vs.<br><br>LAZY ACRES; UC SAN DIEGO HEALTH; UNIVERSITY OF CALIFORNIA HEALTH; and DOES 1-50 inclusive.<br><br>     Defendants. | CASE NO.: 21CV0411 BAS AGS<br><br>ASSIGNED FOR ALL PURPOSES TO: CYNTHIA BASHANT<br>COURTROOM 4B<br><br>**DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO F.R.C.P. RULE 12(b)(6)**<br><br>Date: MAY 24, 2021<br>Dept: 4B<br><br>**PER CHAMBERS, NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>Complaint Filed:   03/08/2021<br>Trial Date:     NONE SET |

DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# I. **INTRODUCTION**

Plaintiff, Salima Witt, has filed a perplexing lawsuit seeking injunctive relief against two completely unrelated entities, for two completely unrelated events, setting forth a vague and uncertain claim of disability discrimination. As it pertains to this moving defendant, The Regents of the University of California, she alleges the University of California, San Diego Jacobs Hospital and Medical Center discriminated against her for requiring her to wear a mask during the height of the COVID-19 pandemic inside of a hospital.

Plaintiff's complaint acknowledges she was not denied access to the hospital, she completed her appointment, and she has suffered no discernable injury, nor will suffer irreparable injury in the future. Plaintiff was not denied the equal enjoyment of the healthcare services or facilities at the hospital. Plaintiff also fails to present any facts in her complaint which demonstrate she even has a disability which precluded her from complying with the mask requirement set in place at the hospital for the protection of all healthcare workers, frontline employees, and other patients on site. Plaintiff claims she suffers from asthma, which the CDC guidelines she relies upon specifically states masks are appropriate for. (See Complaint, Exhibit C, pg. 32).

Plaintiff's complaint ignores that at the time of her one appointment at Jacobs Hospital and Medical Center on November 10, 2020, all healthcare facilities in the state were subject to the CDC recommendations for masks, as well as the California Department of Public Health's (CDPH) mask mandate which required masks in healthcare settings subject to limited exceptions. In short, the hospital was complying with both federal and state recommendations and requirements to protect patients and essential healthcare workers from the direct threat of COVID-19, and were in place to provide a legitimate safety purpose.

Plaintiff's complaint fails to present a factual basis showing that she suffers from a disability preventing her from complying with the hospital's mask

requirement, or in the alternative, wearing a face shield covering. Plaintiff has failed to present any facts which demonstrate she suffered from any discrimination based on a claimed disability by The Regents of the University of California. Therefore, Defendant hereby moves to dismiss Plaintiff's Complaint on the grounds that the claims asserted against it fail to set forth sufficient factual allegations pursuant to F.R.C.P. 12(b)(6).

## II.    STATEMENT OF FACTS

On June 18, 2020, the California Department of Public Health issued an order stating that people in California must wear face coverings when they are in the high risk situation of "obtaining services from the healthcare sector in settings including, but not limited to, a hospital,…medical clinic,…physician office." (Exhibit 1, attached to motion). This order remained in effect without revision until November 16, 2020 (Complaint, Exhibit F).

Allegedly on November 10, 2020, Plaintiff went to the UC San Diego Jacobs Hospital and Medical Center for a medical appointment. (Complaint, pg. 6, ¶ 16). Plaintiff claims to suffer from asthma, but there are no facts plead or evidence attached to the Complaint which confirm this. (Complaint, pg. 2, ¶ 9). The Center for Disease Control has specifically stated that "if you have asthma, you can wear a mask." (Complaint, Exhibit C, pg. 32).

Plaintiff was instructed that in order to enter the hospital, a face mask was required. (Complaint, pg. 7, ¶ 17). Plaintiff complied with the request, wore a face mask, and entered the hospital. (Complaint, pg. 7, ¶ 18). Plaintiff was seen by her doctor, completed her appointment and left the facility. (Id.)

## III.    ARGUMENT

### A.    Standard on Motion to Dismiss

Pursuant to Federal Rules of Civil Procedure Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief". Specifically, Federal Rules of Civil Procedure Rule 12(b)(6) provides,

"Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defense by motion…(6) failure to state a claim upon which relief can be granted."

In analyzing whether a motion to dismiss is applicable to a particular pleading, the United State Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), set forth two principles. First, although a court must generally consider all factual allegations to be true, the presumption is inapplicable to legal conclusions. *Id*. at 678. **The claim may not be supported by "mere conclusory statements,"** but must include "sufficient factual matter . . . that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Id*. (Emphasis added). The pleading must provide more than "labels and conclusions, and a formulaic recitation of the elements." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, the petitioner must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. Second, only a "plausible claim for relief survives a motion to dismiss". *Id*. at 679. Factual statements must bring the claim above a level of mere speculation. *Bell Atlantic Corp*., 550 U.S. at 555. Facts that do nothing more than infer that misconduct is possible will not survive the plausibility test. *Ashcroft*, 556 U.S. at 678.

A pleading that fails to meet the *Ashcroft* standard is subject to a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6). The pleading may be dismissed if there is a "lack of cognizable legal theory". *Balistreri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir. 1988.) Alternatively, even if the pleading has a cognizable legal theory, it may nonetheless be dismissed for the "absence of sufficient facts alleged" under that legal theory. *Id*.

Using these standards, Plaintiff's Complaint does not plead sufficient facts to constitute claims for relief against The Regents of the University of California. Therefore, Defendant's motion should be granted.

**B.     There Are Insufficient Facts Plead To Substantiate Plaintiff's claim**

4

**Of Disability Requiring Injunctive Relief.**

Plaintiff's Complaint states in a conclusive manner she suffers from a disability which prevents her from wearing a mask. There are no facts pleaded, or evidence attached via medical declaration, that establish Plaintiff was unable to comply with Defendant's mask policy. In order to obtain injunctive relief a party must show either "(1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in [the moving party's] favor." *Oakland Tribune, Inc. v. Chronicle Publishing Company, Inc.,* 762 F.2d 1374, 1376 (9th Cir. 1985), *quoting Apple Computer, Inc. v. Formula International, Inc.,* 725 F.2d 1374, 1376 (9th Cir. 1984).

Plaintiff's Complaint does not establish that Plaintiff suffers from a disability beyond a conclusory statement. Plaintiff's Complaint does not establish she has, or will, suffer an irreparable injury at the hands of Defendant. Plaintiff's Complaint establishes the opposite, that no injury was suffered. Plaintiff physically was able to comply with the mask requirement, was permitted to see her doctor, and left the facility without issue. (Complaint, pg. 7, ¶ 18). To date, she has not returned, nor attempted to. There are no allegations plead which indicate an intention to return to the healthcare facility.

**C.    Defendant's Mask Requirement is Not Discriminatory and Plaintiff Cannot Demonstrate a Prima Facie Case of Discrimination So Both Causes of Action Fail**

Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182(a). Discrimination under Title III includes, on the basis of disability, the denial of "the opportunity to participate in or benefit from

5

a good, service privilege, advantage, or accommodation." 42 U.S.C. §12182(b)(1)(A)(ii)-(iii). There "is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *C.L. v. Del Amo Hospital, Inc.*, No. SA CV 18-00475, 2019 WL 2879880 (C.D. Cal June 3, 2019), *quoting City of Los Angeles v. AECOM Servs.,* 854 F.3d 1149, 1160 (9th Cir. 2017). The causes of action are duplicative of each other, and the same arguments and analyses are applicable to both claims.

In the present case the Complaint is clear on its face that Plaintiff was not denied the full and equal enjoyment of goods, services, facilities, or accommodations, of the UC San Diego Jacobs Hospital and Medical Center. Plaintiff's Complaint undisputedly states she was permitted to attend her appointment (Complaint, pg. 7, ¶ 18). There are no facts in the Complaint which establish Plaintiff suffers from a disability preventing her from wearing a mask, as she concedes she was capable of wearing one throughout her appointment. Plaintiff was not denied the usage of the hospital and has suffered no discriminatory injury. There are no facts plead which state Plaintiff requested a face shield, or attempted to wear a face shield, and was denied. Plaintiff's Complaint states she attempted to wear no face covering of any kind, which is not in compliance with either the CDC or the CDPH's guidelines.

There have been limited cases briefed on this issue in the country, but the closest opinion is contained in the *Pletcher v. Giant Eagle, Inc.*, No. 2:20-754, 2020 WL 6263916 (W.D. PA October 23, 2020). In this case the Court denied Plaintiff's request for injunctive relief and held that the Giant Eagle grocery store policy did not violated Title III of the ADA. The Court held there was insufficient evidence to substantiate the Plaintiff's claim that he had a disability which precluded him from complying with the policy and the policy itself was not discriminatory under the ADA. *Id.* at 1. Plaintiff in that case, like in the current case, did not present a colorable factual basis showing there was a disability, and the Plaintiff did not

challenge the reasons why the Department of Health issued the face covering order. *Id*. at 5.

This ruling essentially establishes that absent factual evidence of a true disability which prevents an individual from wearing a mask, and the mask policy is equally applied to all people, there can be no discrimination under the ADA. This is the circumstance as pleaded in this case with one key difference. The Plaintiff in *Pletcher* was actually denied the opportunity to shop in the grocery store and he was banned from the premises. In the current case, Defendant did not deny the Plaintiff the services of the hospital, and there are no facts that indicate she is not permitted back if an appropriate face covering, face shield included, is worn. By this measure, Plaintiff has an even weaker argument of ADA discrimination in this case than was present in *Pletcher*.

The mask policy at the hospital is not in place with a discriminatory motive, but instead in direct response to a global pandemic which has killed hundreds of thousands of Americans. Our constitution principally entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States "to guard and protect." *Jacobsen v. Massachusetts*, 197 U.S. 11, 38 (1905). When those officials "undertake to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad." *Marshall v. United States*, 414 U.S. 417, 427 (1974). *Jacobsen v. Massachusetts* counsels judges to afford wide latitude to the judgment of health experts, so long as such measures are neutral, generally applicable, and have a medical necessity a government can justify.

All of these factors are in play with a mask requirement at a high acuity hospital during the height of a pandemic. Plaintiff herself claims to be a high-risk individual who suffers from cancer and asthma. The CDC specifically states that individuals with asthma can wear a mask. (Complaint, Ex. C., Pg. 32). The CDC also specifically states that masks are more important for people with asthma, kidney disease, and cancer, as they are higher risk individuals for contracting COVID-19

and suffering from severe illness. (Complaint, Exhibit D, Pg. 37; 40; 41).

The CDC also estimates that 35% of people infected with the coronavirus have no symptoms, yet they may unknowingly infect others when in close contact in enclosed spaces. Masks reduce the chance of infected people transmitting the disease. State face-covering requirements relying upon the medical consensus of the efficacy of face coverings is protective of the wearer and others. *Jacobsen* recognizes the state's duty to "guard and protect the safety and health of the people" and that includes the duty to not endanger others.

Plaintiff's Complaint fails to plead facts sufficient to establish a disability exists, discrimination existed or occurred, services were denied, or an injury was suffered. For all of these reasons, both causes of action should be dismissed as against Defendant.

**D.  Defendant's Policy is Defensible Under the Direct Threat Theory**

Regardless of whether or not Plaintiff even has a disability, a reasonable accommodation was offered, requested, or available, Defendant was not required to provide a reasonable modification under the circumstances under the Direct Threat defense theory. 42 U.S. § 12182(b)(3). A place of public accommodation "is not required to provide accommodations for disabled persons if the accommodation, based upon an individualized assessment, 'poses a direct threat to the health or safety of others.'" *C.L. v. Del Amo Hospital, Inc*. No. SA CV 18-00475, 2019 WL 2879880, at 5 (C.D. Cal June 3, 2019) *quoting Tamara v. El Camino Hospital*, 964 F.Supp.2d 1077, 1083 (N.D. Cal. 2013). A 'direct threat' means that "the significant risk cannot be eliminated by a modification of policies, practices, or procedures, or by the provision of auxiliary aids or services." *Lockett v. Catalina Channel Exp., Inc.*, 496 F.3d 1061, 1066 (9th Cir. 2007).

To limit a direct threat from the COVID-19 pandemic, the Defendant hospital was permitted to impose legitimate safety requirements necessary for safe operations. On November 10, 2020 when Plaintiff allegedly visited UC San Diego's

8

Jacob Hospital and Medical Center, there were 198,881 new coronavirus cases in the United States that day alone. The County was placed back in the purple tier, which is the most restrictive tier.[1] California had surpassed 18,000 deaths and neared 1 million individual cases.[2] In other words, San Diego County remained in the absolute height of the pandemic. In an acute hospital setting, containment and prevention are of tantamount importance. The objective information available confirmed the existence of the threat.

An entity asserting a "direct threat" as a basis for excluding an individual bears a heavy burden of demonstrating that the individual poses a significant risk to the health and safety of others. *Lockett v. Catalina Channel Exp., Inc.*, 496 F.3d at 1066. The person making the relevant decision not to provide the service must base his decision on the objective information available to him. *Bragdon v. Abbott*, 524 U.S. 624 649 (1998). Notwithstanding the fact that Plaintiff was not excluded or denied a service, Defendant was under no obligation to accept her alleged assertion of a disability absent any other information, based on the objective data available about the severity of the pandemic on that date. The hospital's policy to require all patients choosing to seek out medical attention in an acute care facility to wear a face covering was consistent with the recommendations of the CDPH, the CDC, and all applicable public health authorities.

On November 10, 2020, Defendant had no way of knowing whether Plaintiff was infected with COVID-19. There was a clear and present direct threat to all patients and healthcare workers onsite at the hospital of contracting the coronavirus. The requirement of Plaintiff to wear a mask in order to seek treatment at the hospital was not disability discrimination pursuant to the Direct Threat theory of defense.

---

[1] https://www.cbs8.com/article/news/health/coronavirus/covid-coronavirus-san-diego-california-nov-10-14-2020/509-a153a8a4-8feb-4738-ba5c-0a0af09301ea
[2] https://www.cnn.com/world/live-news/coronavirus-pandemic-11-10-20-intl/index.html

DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

Therefore, even if the Court determines there is a valid claim pleaded, it is subject to dismissal based on this defense theory.

### E. Defendant's Face Covering Policy is a Legitimate Safety Requirement During the COVID-19 Pandemic

Similar to Defendant's Direct Threat theory of defense, there is a Legitimate Safety Requirement defense applicable to the allegations. Pursuant to 28 C.F.R. § 36.301(b), a public accommodation may impose legitimate safety requirements that are necessary for safe operation. Safety requirements must be based on actual risks, and not on mere speculation, stereotypes, or generalizations about individuals with disabilities. *Tamara v. El Camino Hospital*, 964 F.Supp.2d 1077, 1085 (N.D. Cal. 2013). The face-covering policy in an acute care hospital was neutrally applied. In this case, there are no discriminatory motivating factors at play in the Complaint. The Complaint is clear that Defendant's policy was intended to be used for all people who enter the hospital. The risk of COVID-19 in a high-risk setting such as a hospital is without dispute. The safety concerns at play for both healthcare workers, hospital employees, and patients, was based on a reasonable concern for safety, rather than mere speculation, stereotypes, or generalizations about Plaintiff's alleged disability.

The concern over COVID-19 is not unsubstantiated and totally speculative. It is in fact the opposite. The pandemic affected has all areas of life, most especially the healthcare sector. There is a justifiable interest in protecting all individuals who enter the hospital and the risk of safety absent a mask policy is objectively present. The requirement of Plaintiff to wear a mask in order to seek treatment at the hospital was not disability discrimination pursuant to the Legitimate Safety Requirement theory of defense. Therefore, even if the Court determines there is a valid claim pleaded, it is subject to dismissal based on this defense theory.

## IV. <u>CONCLUSION</u>

Plaintiff's Complaint fails for several reasons. Plaintiff has failed to establish she has a disability. Plaintiff has failed to establish she was subjected to

discrimination based on a disability. Plaintiff fails to plead she was denied services at Defendant's hospital, and in fact, the opposite is true and she completed her appointment. Plaintiff fails to allege the existence of an injury, or the likelihood of an irreparable injury occurring. Plaintiff fails to establish no other accommodation was available or was even requested.

Additionally, assuming a claim is present, which it is not, Defendant has legitimate and applicable defenses. The COVID-19 pandemic is a global threat, particularly dangerous to healthcare providers and patients. There is a direct threat of this hyper-contagious virus which negates the need for specific accommodations to a neutrally applied mask policy within a hospital. The policy was applied generally to all patients, healthcare workers, and hospital employees for the purposes of safety for all.

Therefore, dismissal of this entire meritless and harassing action is warranted as against Defendant, The Regents of the University of California.

DATED: April 7, 2021

PEABODY & BUCCINI LLP

By: _____
THOMAS M. PEABODY
PATRICK S. LUDEMAN
Attorneys for Defendant,
The Regents of the University of California

DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

# EXHIBIT "1"



State of California—Health and Human Services Agency
# California Department of Public Health

**NOTE:** The following guidance is superseded by updated guidance released on <u>November 16, 2020</u>.



**SONIA Y. ANGELL, MD, MPH**
*State Public Health Officer & Director*

**GAVIN NEWSOM**
*Governor*

Released June 18, 2020

- Revised on June 29, 2020 to clarify that children under two years old are exempt from wearing face coverings due to risk of suffocation

## GUIDANCE FOR THE USE OF FACE COVERINGS

Because of our collective actions, California has limited the spread of COVID-19 and associated hospitalizations and deaths in our state. Still, the risk for COVID-19 remains and the increasing number of Californians who are leaving their homes for work and other needs, increases the risk for COVID-19 exposure and infection.

Over the last four months, we have learned a lot about COVID-19 transmission, most notably that people who are infected but are asymptomatic or pre-symptomatic play an important part in community spread. The use of face coverings by everyone can limit the release of infected droplets when talking, coughing, and/or sneezing, as well as reinforce physical distancing.

This document updates existing <u>CDPH guidance</u> for the use of cloth face coverings by the general public when outside the home. It mandates that face coverings be worn state-wide in the circumstances and with the exceptions outlined below. It does not substitute for existing guidance about social distancing and handwashing.

### Guidance

People in California must wear face coverings when they are in the high-risk situations listed below:

- Inside of, or in line to enter, any indoor public space;[1]
- Obtaining services from the healthcare sector in settings including, but not limited to, a hospital, pharmacy, medical clinic, laboratory, physician or dental office, veterinary clinic, or blood bank;[2]
- Waiting for or riding on public transportation or paratransit or while in a taxi, private car service, or ride-sharing vehicle;
- Engaged in work, whether at the workplace or performing work off-site, when:
  - Interacting in-person with any member of the public;
  - Working in any space visited by members of the public, regardless of whether anyone from the public is present at the time;

[1] Unless exempted by state guidelines for specific public settings
[2] Unless directed otherwise by an employee or healthcare provider

- Working in any space where food is prepared or packaged for sale or distribution to others;
- Working in or walking through common areas, such as hallways, stairways, elevators, and parking facilities;
- In any room or enclosed area where other people (except for members of the person's own household or residence) are present when unable to physically distance.

- Driving or operating any public transportation or paratransit vehicle, taxi, or private car service or ride-sharing vehicle when passengers are present. When no passengers are present, face coverings are strongly recommended.
- While outdoors in public spaces when maintaining a physical distance of 6 feet from persons who are not members of the same household or residence is not feasible.

*The following individuals are exempt from wearing a face covering:*
- Persons younger than two years old. These very young children must not wear a face covering because of the risk of suffocation.
- Persons with a medical condition, mental health condition, or disability that prevents wearing a face covering. This includes persons with a medical condition for whom wearing a face covering could obstruct breathing or who are unconscious, incapacitated, or otherwise unable to remove a face covering without assistance.
- Persons who are hearing impaired, or communicating with a person who is hearing impaired, where the ability to see the mouth is essential for communication.
- Persons for whom wearing a face covering would create a risk to the person related to their work, as determined by local, state, or federal regulators or workplace safety guidelines.
- Persons who are obtaining a service involving the nose or face for which temporary removal of the face covering is necessary to perform the service.
- Persons who are seated at a restaurant or other establishment that offers food or beverage service, while they are eating or drinking, provided that they are able to maintain a distance of at least six feet away from persons who are not members of the same household or residence.
- Persons who are engaged in outdoor work or recreation such as swimming, walking, hiking, bicycling, or running, when alone or with household members, and when they are able to maintain a distance of at least six feet from others.

- Persons who are incarcerated. Prisons and jails, as part of their mitigation plans, will have specific guidance on the wearing of face coverings or masks for both inmates and staff.

**Note:** Persons exempted from wearing a face covering due to a medical condition who are employed in a job involving regular contact with others should wear a non-restrictive alternative, such as a face shield with a drape on the bottom edge, as long as their condition permits it.

## Background

*What is a cloth face covering?*

A cloth face covering is a material that covers the nose and mouth. It can be secured to the head with ties or straps or simply wrapped around the lower face. It can be made of a variety of materials, such as cotton, silk, or linen. A cloth face covering may be factory-made or sewn by hand or can be improvised from household items such as scarfs, T-shirts, sweatshirts, or towels.

*How well do cloth face coverings work to prevent spread of COVID-19?*

There is scientific evidence to suggest that use of cloth face coverings by the public during a pandemic could help reduce disease transmission. Their primary role is to reduce the release of infectious particles into the air when someone speaks, coughs, or sneezes, including someone who has COVID-19 but feels well. Cloth face coverings are not a substitute for physical distancing, washing hands, and staying home when ill, but they may be helpful when combined with these primary interventions.

*When should I wear a cloth face covering?*

You should wear face coverings when in public places, particularly when those locations are indoors or in other areas where physical distancing is not possible

*How should I care for a cloth face covering?*

It's a good idea to wash your cloth face covering frequently, ideally after each use, or at least daily. Have a bag or bin to keep cloth face coverings in until they can be laundered with detergent and hot water and dried on a hot cycle. If you must re-wear your cloth face covering before washing, wash your hands immediately after putting it back on and avoid touching your face. Discard cloth face coverings that:

- No longer cover the nose and mouth
- Have stretched out or damaged ties or straps
- Cannot stay on the face
- Have holes or tears in the fabric

### ###