UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALIMA WITT,<br><br>                    Plaintiff,<br><br>     v.<br><br>BRISTOL FARMS, *et al.*,<br><br>                    Defendants. | Case No. 21-cv-00411-BAS-AGS<br><br>**ORDER GRANTING DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS**<br><br>**(ECF No. 3)** |

Plaintiff Salima Witt ("Witt") commenced this action against Defendants Bristol Farms, UC San Diego Health, and University of California Health. (Compl., ECF No. 1.) UC San Diego Health and University of California Health, proceeding as Regents of the University of California ("RUC Defendants"), operated the Jacobs Medical Center and instituted a mandatory mask policy to prevent the spread of COVID-19, under which Witt was required to wear a mask in order to complete her cancer screening examination. Witt seeks injunctive relief ordering RUC Defendants to modify their COVID-19 policy to accommodate persons with respiratory and breathing disabilities by allowing them to enter the Jacobs Medical Center without wearing a face mask.

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** RUC Defendants' motion to dismiss. (ECF No. 3.)

## I. BACKGROUND

### A. Factual Allegations

According to the Complaint, Witt is a resident of the City of Encinitas, California. (Compl. ¶ 3.) Witt has stage three cancer and chronic asthma. (*Id*. ¶ 9.) Wearing a mask on her face obstructs her breathing and causes her to have life threatening respiratory problems. (*Id*.)

Defendants UC San Diego Health and University of California Health are comprised of several academic and medical health centers, including Jacobs Medical Center. (Compl. ¶¶ 5, 6.) Defendants UC San Diego Health and University of California Health represent themselves as the Regents of the University of California. (Mot. to Dismiss 2:4–5, ECF No. 3.)

On November 10, 2020, Witt walked into the Jacobs Medical Center lobby for her cancer screening examination. (Compl. ¶ 16.) A hospital employee prevented Witt from entering for not wearing a face mask that covered her nose and mouth. (*Id*. ¶ 17.) RUC Defendants' COVID-19 policy required everyone to wear masks that covered their nose and mouth. (*Id*. ¶ 19; Ex. G, ECF No. 1 at 53–56.) According to Witt, the policy "made no accommodation for patients or visitors with disabilities that prevented them from accessing their medical services with a face mask covering their nose and mouth, due to their disability." (Compl. ¶ 19.) It "imposed a no-exception blanket rule, barring anyone not wearing a face mask entry into all its medical facilities," including the Jacobs Medical Center. (*Id*.)

Witt asked the hospital employee what accommodation UC San Diego Health made for persons with her respiratory and breathing disabilities, and the employee told Witt there was none. (*Id*. ¶ 17.) The employee told Witt she must put on a mask to enter the facility and attend her cancer screening appointment. (*Id*. ¶ 17.) Witt put on a face mask provided

by the employee to attend her appointment. (*Id.* ¶ 18.) "While waiting in the lobby . . . [Witt] quickly was overcome with a strong choking sensation, and was forced to pull down the facial mask periodically, in order to avoid gasping for breath." (*Id.*) Witt completed her cancer screening examination and left the Jacobs Medical Center. (*Id.*)

### B. Procedural History

Witt commenced this action on March 8, 2021, alleging that RUC Defendants' COVID-19 policy discriminates against her based on her disability. (ECF No. 1). Witt raises two causes of action against RUC Defendants: violations of Title II and III of the ADA, 42 U.S.C. §§ 12131(1)(A), 12181(7)(F) ("Count Two"); and violation of the Rehabilitation Act of 1973, 42 U.S.C. § 791 ("Count Three"). (Compl. ¶¶ 29–43.)[1] Witt is also suing DOE defendants 26–50 for the same causes of action.

RUC Defendants move to dismiss Witt's claims raised against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. (Mot. to Dismiss, ECF No. 3.) Witt filed an opposition to the motion (ECF No. 6), and RUC Defendants filed a reply (ECF No. 7). RUC Defendants argue Witt fails to state that she has a disability or was subjected to discrimination based on a disability. (Mot. to Dismiss 10:27–11:1). RUC Defendants also argue that Witt's claim should be dismissed even if her pleading states that she was disabled because the affirmative defenses of direct threat and legitimate safety requirement apply. (*Id.* 11:6–12).

## II. RULE 12(b)(6) LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain

---

[1] Witt also raises a cause of action under Title III of the ADA against Bristol Farms and DOES 1–25 ("Count One"), which does not involve RUC Defendants.

detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Although the court accepts plaintiff's allegations as true, it is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . law[] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

"When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court's consideration is limited to the following: the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice." *Lee v. Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

### III. ANALYSIS

The Court applies the above legal standard to weigh RUC Defendants' motion to dismiss and concludes that Witt does not state a plausible claim for relief.

#### A. The Causes of Action are Substantially the Same.

Witt raises two causes of action against RUC Defendants: (1) under Titles II and III of the ADA and (2) the Rehabilitation Act of 1973.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "public entity" includes any state or local agencies, which includes RUC Defendants, who are the governing board of the University of California, a "publicly funded institution of higher education." *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999) (citing 42 U.S.C. § 12131(1)(B)); *See* Compl. ¶ 33.

> Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act, which provides: 'No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .'

*Zukle*, 166 F.3d at 1045 (citing 29 U.S.C. § 794). Witt alleges that RUC Defendants are directly funded by the federal government and by their patients' Medicare and Medi-Cal. (Compl. ¶ 41.)

Similarly, under Title III of the ADA "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182. A hospital is considered a public accommodation for the purposes of Title III. *Id.* § 12181(7)(F).

In order to have a valid Title III claim, a plaintiff must prove: "(1) [she] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of [her] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. § 12182(a)–(b)). Title II and Rehabilitation Act claims similarly require the plaintiff to prove disability and discrimination based on disability.

Because the elements of Witt's ADA and Rehabilitation Act claims do not differ in respect to the resolution of this motion, the Court addresses these claims together. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135–36 (9th Cir. 2001); *see also Zukle*, 166 F.3d at 1045 (listing the elements for a prima facie case under either the ADA or Rehabilitation Act).

### B. Witt Does Not State a Plausible Claim for Relief

#### 1. Disability

Witt plausibly states that she meets the first element of her claims against RUC Defendants: that she is disabled for purposes of the ADA. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Whether Witt's condition constituted a disability under the ADA involves three inquiries: (1) "whether [plaintiff's] condition was a physical impairment"; (2) "whether the life activities from which she was impaired (e.g., [breathing]) amounted to major life activities"; and (3) "whether [plaintiff's] impairment substantially limited [her] from performing the identified major life activities." *See Gribbon v. United Parcel Service, Inc.*, 528 F.3d 1166, 1169 (9th Cir. 2008) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)).

Here, Witt alleges that she suffers from chronic asthma. (Compl. ¶ 9.) "[A]sthma is a physical impairment as defined by the ADA, since it is a physiological disorder or condition which affects the respiratory system, one of the bodily systems listed in the statute." *Nugent v. Rogosin Inst.*, 105 F. Supp. 2d 106, 112 (E.D. N.Y. 2000); (citing 29 C.F.R. § 1630.2(h)(1) and *Heilweil v. Mt. Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir.1994.)); 42 U.S.C. § 12102(2)(B). Also, the ADA includes "breathing" as a major life activity. 42 U.S.C. § 12102(2)(A). Therefore, Witt plausibly states that she has a physical impairment that limits one or more of her major life activities.

The remaining inquiry is "whether [p]laintiff's impairment substantially limited her from performing the identified major life activities." *Gribbon*, 528 F.3d at 1169. In

response to prior Supreme Court and lower court cases that had given "substantially limits" an unduly narrow construction, Congress passed a 2008 amendment to the ADA. *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014) (citing ADA Amendments Act of 2008, Pub. L. No. 110–325, 42 U.S.C. § 12101). The amendment provides the definition of disability shall be construed in favor of broad coverage of individuals, to the maximum extent permitted by the terms of this chapter. *Id*.

According to post-2008 regulations promulgated by the EEOC:

> An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.

*Weaving*, 763 F.3d at 1111 (citing 29 C.F.R. § 1630.2(j)(1)(ii)). Determining whether an impairment is substantially limiting "requires an individualized assessment." 29 C.F.R. § 1630.2(j)(1)(iv).

Here, under the broad coverage of the ADA Amendments Act and reading the facts alleged in the light most favorable to Witt, it is plausible that Witt's chronic asthma substantially limits her breathing. Witt alleges she "was overcome with a strong choking sensation and was forced to pull down the facial mask periodically, in order to avoid gasping for breath." (Compl. ¶ 18.) Assuming the truth of this claim, it is plausible that Witt's chronic asthma substantially limits her breathing as compared to most people in the general population.

Accepting the factual allegations pleaded in the Complaint as true and drawing reasonable inferences from them in favor of Witt, it is plausible that her breathing, at least as to her chronic asthma, was substantially limited and qualified her as disabled for purposes of the ADA. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

### 2. Discrimination based on Disability

As to the second element, whether Witt was denied an accommodation based on her disability, RUC Defendants argue that even if Witt states that she is disabled, the

affirmative defenses of direct threat and legitimate safety requirement apply. (Mot. to Dismiss 11:6–7). "[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where the allegations in the complaint suffice to establish the defense." *Sams v. YAHOO!, Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

As will be discussed in detail below, the direct threat affirmative defense is apparent on the face of the Complaint and is established by the allegations in the pleading and the attached exhibits. *See Lee v. Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) (explaining that when ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court may consider documents attached to the complaint). Witt herself attached as exhibits webpages from the U.S. Centers for Disease Control and Prevention ("CDC") website (Exs. B–E, ECF No. 1 at 20–48), which support RUC Defendants' direct threat affirmative defense. The Court analyzes only the direct threat defense because it is sufficient to rule on this motion to dismiss, and analysis of the legitimate safety requirement defense is not necessary.

          **a.**    **Direct Threat Defense**

Direct threat is a defense available to an ADA cause of action codified in the statute. The statutory provision states:

> Nothing in this subchapter shall require an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity where such individual poses a direct threat to the health or safety of others. The term "direct threat" means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services.

42 U.S.C. § 12182(b)(3). "The ADA's direct threat provision stems from the recognition in *School Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 287 (1987), of the importance of prohibiting discrimination against individuals with disabilities while protecting others from significant health and safety risks, resulting, for instance, from a contagious disease." *Bragdon*, 524 U.S. at 649.

"The entity asserting a 'direct threat' as a basis for excluding an individual bears a heavy burden of demonstrating that the individual poses a significant risk to the health and safety of others." *Lockett v. Catalina Channel Exp., Inc.*, 496 F.3d 1061, 1066 (9th Cir. 2007). In determining whether an individual poses a direct threat to the health or safety of others, a public entity must make an individualized assessment

> based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: [t]he nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk.

29 C.F.R. § 36.208(b).

The existence of a significant risk is determined from the standpoint of the health care professional who refuses treatment or accommodation, and the risk assessment is based on the medical or other objective, scientific evidence available to him and his profession, not simply on his good-faith belief that a significant risk existed. *Bragdon*, 524 U.S. at 627–628. "[W]hile this determination 'may not be based on generalizations or stereotypes,' the assessment 'will not usually require the services of a physician,' and the public accommodation can consider public health authorities, including the [CDC]." *Giles v. Sprouts Farmers Market, Inc.*, No. 20-cv-2131-GPC-JLB, 2021 WL 2072379, at *5 (S.D. Cal. May 24, 2021) (citing ADA Title III Technical Assistance Manual § III-3.8000 and *Disabled Rts. Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 876 (9th Cir. 2004)).

To summarize, as long as a public entity accused of disability discrimination conducted an individualized assessment of whether an individual poses a direct threat—not based on generalized stereotypes, but based on reasonable judgment grounded in medical knowledge and public health authorities, and based on consideration of reasonable modifications—denying that individual access to the premises does not constitute discrimination under the ADA. *Giles*, 2021 WL 2072379, at *5.

- 9 -

21cv411

Here, the Court agrees with RUC Defendants that allowing Witt to enter the hospital without a mask posed a direct threat to the health and safety of RUC Defendants' patients, visitors, and staff. RUC Defendants' individualized assessment was whether a patient, such as Witt, was wearing a facial covering or not. *Giles*, 2021 WL 2072379, at *5. Witt's own Complaint alleges that she was barred entry by RUC Defendants' employee for not wearing a mask. (Compl. ¶ 17.)

This individual assessment was justified by the objective medical knowledge available, including the public health authorities referenced by Witt. As demonstrated by Witt's exhibit, CDC advises that COVID-19 can cause severe illness and even death, and the main way that COVID-19 spreads is from person to person. (Ex. B, ECF No. 1 at 20–23.) According to the CDC, masks provide an extra layer to help prevent respiratory droplets from traveling in the air and onto other people. (*Id.*) RUC Defendants' COVID-19 policy required all patients, visitors and staff to wear a mask because of the significant health and safety risks of COVID-19, and the direct threat defense applies to shield the policy from Witt's claims. (Ex. G.; Compl. ¶ 35.)

### b. Witt's Arguments

Witt's arguments against this conclusion are not persuasive. Witt first contends that she "presented no specific or observable condition, behavior or other indicia constituting a direct threat to the health and safety of others." (Opp'n 9:19–20.) "[U]pon entering the Jacobs Medical Center, Witt was not coughing, sneezing, sweating or otherwise displaying any symptoms of COVID-19 nor any other flu or cold-like symptom." (Compl. ¶ 16.) However, the CDC advises that COVID-19 can be spread by people who do not have symptoms and do not know they are infected. (Ex. B.) As stated by RUC Defendants, "[t]his is the nature of why the pandemic is so dangerous, because the threat is all around and is difficult to objectively observe absent sophisticated medical testing." (Reply 6:17–19.) RUC Defendants' individualized assessment to determine whether Witt posed a direct threat was whether Witt was wearing a mask, and not whether Witt displayed any

symptoms of COVID-19, because without a mask Witt posed a direct threat to the health and safety of others.

Witt's second contention is that "[RUC Defendants] were nevertheless required under the Acts to provide alternate means of accessing her cancer treatment." (Opp'n 10:14–18.) Under the direct threat defense, RUC Defendants were not required to provide an alternative means for Witt to enter the hospital without a mask when doing so would pose a significant risk to the health or safety of others. "The term 'direct threat' means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services." 42 U.S.C. § 12182(b)(3). Witt has not identified a modification, or an alternative to wearing a mask, that eliminates the significant risk to the health and safety of visitors, patients and hospital staff posed by allowing Witt to enter the hospital without a mask.

To the extent that Witt argues the hospital staff should have allowed her to enter using an alternative device such as a face shield, it was within RUC Defendants' discretion to require masks and not face shields. RUC Defendants cite to CDC recommendations, which provide: "in general, the safest practice is for everyone in a healthcare setting to wear source control."[2] (Reply 7:14–16.) "Source control refers to use of respirators or well-fitting facemasks or cloth masks to cover a person's mouth and nose to prevent spread of respiratory secretions when they are breathing, talking, sneezing, or coughing." (*Id*.) Further, Witt's own exhibits demonstrate that CDC advises against face shields to be worn instead of masks. (Ex. E, ECF No. 1 at 45–48.) According to the CDC, a face shield is effective at protecting the person wearing it from the splashes to the face, particularly the eyes, but face shields do not protect others from respiratory droplets exhaled by the wearer. (*Id*.)

---

[2] *Interim Infection Prevention and Control Recommendations for Healthcare Personnel During the Coronavirus Disease 2019 (COVID-19) Pandemic*, Centers for Disease Control and Prevention (Sept. 10, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/infection-control-recommendations.html.

Witt cites to a California Department of Public Health ("CDPH") guidance letter (Ex. F, ECF No. 1 at 49–52) issued November 16, 2020, which includes an exemption from the mask requirement for persons with a medical condition or disability. (Compl. ¶ 15.) However, Witt entered the Jacobs Medical Center on November 10, 2020, and the November 16th CDPH guidance letter would not have been available to RUC Defendants. *See Bragdon*, 524 U.S. at 627–28 (explaining that the risk assessment is based on the medical or other objective scientific evidence available). The letter also notes that "such conditions are rare," and: "[p]ersons exempted from wearing a face covering due to a medical condition who are employed in a job involving regular contact with others must wear a non-restrictive alternative, such as a face shield with a drape on the bottom edge, as long as their condition permits it." (Ex. F.) Similar to the CDPH guidance letter, the ADA's direct threat provision recognizes the importance of prohibiting discrimination against individuals with disabilities while protecting others from significant health and safety risks resulting from COVID-19. *Bragdon*, 524 U.S. at 649. The Court concludes, under the direct threat defense, that a significant risk to the health and safety of RUC Defendants' patients, visitors and staff exists that cannot be eliminated by a modification of RUC Defendants' COVID-19 policy requiring Witt to wear a facial mask covering her nose and mouth to obtain medical services in RUC Defendants' facilities. 42 U.S.C. § 12182(b)(3).

The Court's conclusion is supported by recent decisions by other district courts in similar ADA actions, which have found the direct threat defense dispositive where a defendant's COVID-19 policy requires masks. *See*, *e.g.*, *Giles*, 2021 WL 2072379, at *1; *Hernandez v. El Pasoans Fighting Hunger*, No. EP-21-CV-00055-DCG, 2021 WL 2763827, at *1 (W.D. Tex. July 1, 2021). In *Hernandez*, the court concluded that the ADA did not require defendants alter their mask policy for plaintiff when doing so would pose a direct threat to the health and safety of others, including plaintiff himself, due to the COVID-19 pandemic. *Hernandez*, 2021 WL 2763827, at *6. Similarly, in *Giles* the court found that defendant's policy requiring masks for entry to its grocery store chain did not

constitute "discrimination" under Title III of the ADA "because Defendant conducted an individualized assessment of the direct threat posed by Plaintiff by her unwillingness to wear a face mask or face shield[.]" *Giles*, 2021 WL 2072379, at *6. The *Hernandez* and *Giles* courts construed circumstances substantially similar to the present action, and the Court finds no reason to diverge from their conclusions.

In summary, RUC Defendants conducted an individualized assessment and made a reasonable judgment, under 29 C.F.R. § 36.208(b), in refusing to modify their COVID-19 mask policy for Witt because without a mask Witt posed a direct threat to the health and safety of RUC Defendants' patients, visitors, and staff that no modification could eliminate. Accordingly, requiring Witt to wear a mask was not disability discrimination pursuant to the direct threat defense.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** RUC Defendants' motion to dismiss. (ECF No. 3.) The Complaint does not state a plausible claim for relief against RUC Defendants, under Titles II and III of the ADA as well as the Rehabilitation Act of 1973.

**IT IS SO ORDERED.**

DATED: November 9, 2021

Hon. Cynthia Bashant
United States District Judge